IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| BAILEY HARSTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 2:07CV00142 SWW |
| | * | |
| DEWAYNE CHAPPELL and NANCY | * | |
| CHAPPELL d/b/a DEWAYNE AND | * | |
| NANCY CHAPPELL FARM, | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Bailey Harston ("Harston") brings this suit against DeWayne Chappell and Nancy Chappell d/b/a DeWayne and Nancy Chappell Farm ("the Farm"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000(e); 42 U.S.C. § 1981; and the Arkansas Civil Rights Act of 1993, codified at Ark. Code Ann. § 16-123-101, *et seq*.  Now before the Court is defendants' motion for summary judgment, plaintiff's response, and defendants' reply.  After careful consideration, and for the reasons stated below, the Court finds the motion for summary judgment should be granted.

**Background**

Harston is an African-American man who has been employed by defendants as a farmhand since 1995 or 1996.  He was terminated in May 2007.  Beginning in 2004, Harston earned $600.00 per week and the Farm provided him with a truck to drive for work purposes.  He made a higher salary than most of the Farm's employees, including white employees, and was one of the Farm's

two highest paid employees. As a part of his salary arrangement, the Farm permitted Harston to charge gas, parts, equipment and services for his personal use at various stores, and the Farm deducted the value of the goods and services from plaintiff's pay.

Larry Bozarth testified that he and Harston had been working on the Farm until late Sunday evening, April 29, 2007, and had been drinking a little. Pl's. Resp. to Mot. Summ. J., Ex. 3 at 11-12, 24. They got home around 1:00 a.m. Around 7:00 a.m., Harston came by to pick Bozarth up for work. However, Harston told Bozarth he would have to find another ride to work, and asked Bozarth to tell DeWayne Chappell ("Chappell") that Harston was not feeling well and would call him later. Bozarth said that when he gave Chappell the message, he was "a little upset." *Id.* at pp. 14-15. Harston testified that he called Chappell at least twice on Monday morning to tell him he would be late but Chappell did not answer his phone. Defs.' Mot. Summ. J., Ex. B at 31-32. Chappell testified he did not answer the phone because another employee had already told him Harston was not going to be at work. *Id.*, Ex. A at 23.

James Larkin Butler, an employee at a local auto parts store, testified that at around 7:00 a.m. Monday morning, Harston came to the store and, uncharacteristically, spoke to Butler for about ten minutes. Harston told Butler he and Chappell "had gotten crossways." Butler said Harston was "furious," called Chappell names, and complained that Chappell did not respect plaintiff. According to Butler, Harston said he had quit, was going to quit, and was on his way to the unemployment office. *See* Def's Mot. Summ. J., Ex. D at 7-9. Later that day, Chappell came in the store and Butler remarked that he understood Chappell was one man down. When Chappell asked Butler what he

meant, Butler told Chappell that Harston was in earlier and said he had quit. *Id.* at 11. Harston was terminated on or about May 2, 2007.

Harston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about August 15, 2007, he received a Dismissal and Notice of Rights from the EEOC. He filed a lawsuit in this Court on November 13, 2007.

In their motion for summary judgment, defendants argue the complaint should be dismissed because (1) the Farm does not qualify as an "employer" within the meaning of Title VII and ACRA, and (2) plaintiff fails to establish a *prima facie* case of discrimination and retaliation under § 1981. In response, plaintiff agrees defendants do not have the requisite number of employees to be an "employer" under Title VII[1] but argues he has established a claim under § 1981.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

---

[1] Defendants do not qualify as an employer under the ACRA either and, therefore, his claims under state law will be dismissed as well. *See* Ark. Code Ann. § 16-123-102(5)(definition of employer under the ACRA).

(1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

Harston alleges he was terminated because of race and was retaliated against because he complained that he was paid less than comparable white employees.

**1.     Race Discrimination**

The *McDonnell Douglas* burden-shifting framework governs claims of race discrimination under 42 U.S.C. § 1981. *Gordon v. Shafer Contracting Co.,* 469 F.3d 1191, 1196 (8th Cir. 2006). The establishment of a *prima facie* case creates a rebuttable presumption of discrimination. The employer may rebut this presumption by articulating one or more non-discriminatory reasons for the

employment decision. When the *prima facie* case has been successfully rebutted, the presumption of discrimination drops out of the picture, and the burden shifts back to the plaintiff to present evidence to support a finding that the adverse employment decision was an act of intentional discrimination based on race.

To establish a disparate treatment claim, a plaintiff must show (1) he is a member of a protected group; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) "'circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dep't of Health and Senior Servs.,* 421 F.3d 734, 738-39 (8th Cir. 2005). The Farm argues that Harston cannot establish a *prima facie* case because he cannot show that similarly situated employees, who were not members of the protected group, were treated differently.

Harston did not go to work on April 30 because he claimed he was sick. He admits he had been drinking until after midnight. Defs.' Mot. Summ. J., Ex. B at 29-30. Instead of going to work, he went to the parts store and complained about Chappell not answering the phone. He said he told Butler he was thinking about quitting. *Id.* at 34. According to Chappell, when Bozarth got to work, he told Chappell that he and Harston had been drinking. *Id.* at Ex. A p. 22. Chappell said he had decided to fire Harston before Chappell went to the parts store the afternoon of April 30, 2007. He said he had accepted Harston being late and coming to work hung over in the past, but decided he had had enough. He testified it was planting season and Harston knew how important it was to get the crops planted when the weather was good. *Id.* Ex. A at 22-23, 46; Ex. B at 12-14. Harston

appeared at work on May 1 and Chappell told him he was fired.  He said Harston called about two days later pleading for his job but he refused to take him back. *Id.*, Ex. A at 11-12, 27.

Harston complains that other farmhands came to work late and were not disciplined and that one white employee would say he was going to quit in front of Chappell and got a raise every year.  Bozarth testified Chappell would let white employees off to go deer hunting but would not let Harston off sometimes.  Pl's. Mot. Summ. J., Ex. 3 at 22.

"'Employees are similarly situated when they are involved in or accused of the *same offense* and are disciplined in different ways.'  This is a rigorous test to meet." *King v. Hardesty,* 517 F.3d 1049, 1063 (8th Cir. 2008)(internal citations omitted).  Plaintiff has failed to present evidence that other employees failed to attend work because of an alcohol-related illness and made disparaging remarks about the boss at a local parts store.  Therefore, plaintiff has failed to establish that similarly situated employees not in the protected class were treated leniently for conduct of the same seriousness.

Even assuming plaintiff can establish a *prima facie* case, he must do more than simply discredit an employer's non-discriminatory reason.  He must present evidence to support a finding that the real reason for his termination was race. *See Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir. 1994).  To survive a motion for summary judgment, the nonmoving party "'must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995) (internal citation omitted).

Chappell testified that Harston had in the past reported to work hung over and he would allow Harston to work and to drive his machinery. Defs.' Mot. Summ. J., Ex. A at 13-14. He said once Harston got to work, got his equipment, and went to the field, he would work consistently throughout the day and into the night as well if necessary. Pl's. Mot. Summ. J., Ex. 1 at 16. Chappell said he never disciplined Harston for performance issues but did dock his check once for being late. *Id.* at 17. He also said he took the truck away from Harston a couple of times for using it for personal reasons. *Id.* There is no question that when Harston came to work he did his job, but Chappell said he had contemplated terminating Harston several times over the years, including once about a year before May 2007. *Id.* at 20. Chappell testified Harston always had personal business to take care of and took a lot of time off. He said that between being late, the hangovers, and wanting time off, his patience had been wearing thin. *Id.* at 20-21.

Courts do not sit as a "super-personnel department" with the power to second-guess employer's business decisions. *See Groves v. Cost Planning and Mgmt. Int'l, Inc.*, 372 F.3d 1008,1010 (8th Cir. 2004); *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995); *see also Day v. Johnson,* 119 F.3d 650, 657 (8th Cir.1997) ( "federal courts are not self-appointed personnel managers, and they may not second-guess the fairness or wisdom of an employer's nondiscriminatory employment decisions"). "Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Rose-Matson v. NME Hosp., Inc.,*133 F.3d 1104, 1109 (8th Cir. 1998).

The Court finds there is no evidence from which a reasonable jury could determine that defendants terminated Harston because he is black. Harston admitted he had a history of tardiness and drinking. He admitted he was disciplined for being late to work and using the company truck for personal use. He did not report to work on April 30 and he was terminated.

**2.     Retaliation**

As to his retaliation claim, Harston alleges he "complained to the Defendants about paying Caucasian employees at a higher rate of pay than him even though he was more experienced." Compl., ¶ 14. He alleges that "the Defendants were motivated to take the adverse actions against him because of racial animus and a desire to retaliate against him for the exercising his right to engage in protected activity when he complained about receiving less pay than Caucasian workers," Compl., ¶ 15, and that "[a]lthough Plaintiff has consistently proven to be highly capable at his job duties, the Defendants have ridiculed, belittled, subjected him to demeaning and slanderous remarks, which cause him to suffer humiliation, degradation, and extreme mental anguish at the hands of their supervisors." Compl., ¶ 16.

To establish a *prima facie* claim of retaliation, a plaintiff must show he engaged in protected activity, that the employer took adverse action against him, and that there is a causal connection between the two events. *McClure v. Career Systems Dev. Corp.,* 447 F.3d 1133, 1137 (8th Cir. 2006).

> As our cases have repeatedly emphasized, however, '[a]n adverse employment action means 'a *material* employment disadvantage.'' Thus, we have held that '[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard.' We

    have also reiterated, however, that 'minor changes in working conditions that merely inconvenience an employee or alter an employer's work responsibilities do not.'

*Brannum v. Missouri Dep't of Corrections,* 518 F.3d 542, 549 (8th Cir. 2008)(internal quotations omitted). In or about 2005, Harston approached Chappell to inquire as to the amount of his salary. Defs.' Mot. Summ. J., Ex. B at 45-6. Chappell realized that a mathematical error had been made in plaintiff's pay, and Harston was compensated for the error and received an increase in pay. *Id.*, Ex. A at 30-31; Ex. B at 45-6. It is undisputed that when Harston made the inquiry about his pay, he did not mention or compare his salary to any other employee. Pl's. Resp. to Defs.' Statement of Undisputed Facts, ¶ 32.

  When a particular action by an employer is corrected in a timely manner, it cannot be considered an adverse employment action. *See Jackson v. United Parcel Service, Inc.,* 548 F.3d 1137, 1142 (8th Cir. 2008)(employee promptly reinstated with full back pay and seniority). To the extent that Harston complains defendants ridiculed and humiliated him for making the inquiry or being paid less than the white employee, these allegations do not establish adverse employment action. Further, Harston cannot show a causal connection between his inquiry about his salary in 2005 and his termination in May 2007.

  A causal connection may be shown by proof that the adverse action followed the protected activity closely in time. "[A] gap in time between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after the complaint.'" *Calder v. TCI Cablevision of Missouri, Inc.,* 298 F.3d 723, 731 (8th Cir. 2002)(internal citation omitted). Plaintiff presents no evidence from which a reasonable jury could find that defendants retaliated against plaintiff for asking about his salary.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 11] is hereby granted.  Judgment will be entered for defendants.

DATED this 30th day of January 2009.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE